Thomas J. Leonard
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
tleonard@boonekarlberg.com

Michael B. Marion (*Pro Hac Vice* pending)
BYCER & MARION
7220 N. 16th Street, Suite H
Phoenix, AZ 85020
Telephone: (602) 944-2277
michael@bycermarion.com

*Attorneys for Plaintiff Wildfire Defense Systems, Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| WILDFIRE DEFENSE SYSTEMS, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>HAS, LLC, a Wyoming limited liability company, d/b/a FRONTLINE WILDFIRE DEFENSE, d/b/a FIRE FRIENDS, LLC,<br><br>              Defendant. | Case No. <u>CV-26-54-BU-JTJ</u><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Wildfire Defense Systems, Inc. ("WDS" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against HAS, LLC d/b/a Frontline Wildfire Defense d/b/a Fire Friends, LLC, and alleges as follows:

## **INTRODUCTION**

1.      This is an action for trademark infringement and unfair competition arising from Defendant's unauthorized and continuing use, in commerce, of the confusingly similar designation "Wildfire Defense System(s)" and related

variations in connection with Defendant's wildfire-related goods and services, including Defendant's website and marketing materials.

2.     WDS seeks injunctive relief, monetary relief, and all other appropriate remedies to prevent continued consumer confusion, diversion of goodwill, and harm to WDS's reputation.

## **PARTIES**

3.     Plaintiff WDS is a corporation organized under the laws of Montana with its principal place of business in Bozeman, Montana.

4.     WDS has used the WILDFIRE DEFENSE SYSTEMS mark in commerce in connection with wildfire professional consulting, monitoring, risk intervention, and related services since at least as early as 2008.

5.     Defendant HAS, LLC ("HAS" or "Defendant") is a Wyoming limited liability company. Upon information and belief, HAS conducts business under the names Frontline Wildfire Defense and Fire Friends, LLC.

6.     Upon information and belief, HAS maintains an office in the District of Montana, including in or near Big Sky, Montana, employs personnel in Montana, and carries out material business activities in Montana, including marketing and sales activities directed to Montana residents and entities.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over WDS's federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

8. This Court has supplemental jurisdiction over the Montana common-law claim under 28 U.S.C. § 1367(a).

9. This Court has personal jurisdiction over HAS because HAS has purposefully availed itself of, and/or purposefully directed activities toward, Montana, including by maintaining an office and employees in Montana and committing infringing acts that caused foreseeable harm in Montana.

10. The exercise of personal jurisdiction is consistent with due process because HAS's suit-related conduct creates a substantial connection with Montana, and WDS's claims arise out of or relate to HAS's Montana contacts, including in-district operations and the in-district effects of HAS's infringing marketing and sales.

11. To the extent HAS disputes specific jurisdiction, WDS alleges jurisdiction is based on HAS's own forum contacts—not merely WDS's residency or in-forum injury.

12. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because HAS is subject to personal jurisdiction in this District.

13.     Intra-district assignment to the Butte Division is proper because Defendant maintains an office in this District, employs personnel in this District, and has caused harm to WDS in this District.

## WDS'S TRADEMARK RIGHTS

14.     WDS is the owner of valid and subsisting trademark rights in the following marks, among others:

a.     WILDFIRE DEFENSE SYSTEMS — U.S. Trademark Registration No. 7980439 (Principal Register). A copy of the registration is attached hereto as **Exhibit A**.

b.     WILDFIRE DEFENSE SYSTEMS — U.S. Trademark Registration No. 4535064. A copy of the registration is attached hereto as **Exhibit B**.

15.     WDS's rights in its marks are also supported by extensive use in commerce, advertising, promotion, and consumer recognition throughout the United States, including in Montana.  In particular, since 2008, WDS has been, the most trusted partner in wildfire loss intervention, offering advanced technology, nationally-certified wildfire specialists, and data-driven strategies in the United States. WDS operates the largest insurance carrier wildfire resource fleet in the U.S., providing reliable, year-round response in 22 states. See Wildfire Defense Systems, Inc. Service Overview attached hereto as **Exhibit C**.

4

16.    WDS's trademark rights include both registered rights enforceable under 15 U.S.C. § 1114 and common-law rights protectable under 15 U.S.C. § 1125(a).

17.    WDS alleges the mark has acquired distinctiveness/secondary meaning through longstanding, substantially exclusive use and marketplace recognition, including as reflected in WDS's Principal Register registration.

18.    WDS's WILDFIRE DEFENSE SYSTEMS trademark has achieved widespread recognition as a source identifier in the wildfire services and insurance industries, as demonstrated by extensive unsolicited national media coverage. For example, on or about January 11, 2025, FireRescue1 — a leading trade publication serving the fire and emergency services community — published an article titled "As wildfires rage, private firefighters join the fight for the fortunate few," reporting on WDS's response to the catastrophic Los Angeles County wildfires and identifying WDS by its full WILDFIRE DEFENSE SYSTEMS trademark. The article recognized WDS as the Montana-based company that "contracts with insurance companies to defend the homes of customers who buy policies that include their services," and noted that WDS had "been contracting with insurance companies since 2008 and employs hundreds of firefighters, engineers and other staff." The article further reported that WDS's founder and CEO stated that the company responded to all 62 wildfires that threatened structures in California in

2024 without losing a single property. A true and correct copy of this article is attached hereto as **Exhibit D**.

19.     The recognition of the WILDFIRE DEFENSE SYSTEMS mark extends to international industry platforms. Lloyd's of London — the world's preeminent insurance marketplace — published a featured profile of WDS on its official website, identifying WDS by its full WILDFIRE DEFENSE SYSTEMS (WDS) trademark and describing WDS's headquarters in Bozeman, Montana. The Lloyd's profile highlighted that WDS's team tracks wildfires across 22 U.S. states, with over 250 ignitions monitored on a busy day, and quoted WDS's CEO and founder on the company's better-than-99% success rate in protecting serviced properties, with over 100,000 wildfire ignitions tracked since 2013. Lloyd's described WDS as a highly innovative and niche provider within the insurance market and highlighted WDS's entry into the Lloyd's market through a syndicate in a box structure. This prominent placement within Lloyd's own media channels reflects the degree to which the WILDFIRE DEFENSE SYSTEMS mark is recognized as a source identifier within the international insurance industry. A true and correct copy of this profile is attached hereto as **Exhibit E**.

20.     Regional and local media outlets have also recognized WDS's WILDFIRE DEFENSE SYSTEMS mark as associated exclusively with WDS. On September 27, 2024, the Spokesman-Review, a leading newspaper serving the

6

Inland Northwest region, published a news article covering the grand opening of WDS's new Post Falls, Idaho facility under the headline "Private firefighting company opens location in Post Falls." The article identified WDS throughout by its WILDFIRE DEFENSE SYSTEMS name and trademark, quoted WDS's CEO David Torgerson's statement that "[w]e've built the largest private wildfire services provider in North America" and "because there really isn't a private sector outside of that area, it makes us the largest wildfire services provider in the world," and confirmed that WDS has responded to roughly 1,400 wildfires since inception and has serviced close to 100,000 homes and businesses inside perimeters of wildfire evacuation zones. The article further noted that WDS's approximately 400 firefighters are fully trained to NWCG standards and are members of the International Association of Firefighters union. A true and correct copy of this article is attached hereto as **Exhibit F**.

21.    Perhaps most compellingly, major domestic insurance companies — who constitute the primary commercial audience for WDS's services — expressly acknowledge the WILDFIRE DEFENSE SYSTEMS trademark as proprietary to WDS. American Family Insurance, one of the nation's largest homeowners insurance carriers, maintains a public-facing webpage dedicated to its Wildfire Defense Services Endorsement, which is offered in partnership with WDS. That webpage expressly states: "WDS and Wildfire Defense Systems are trademarks of

7

Wildfire Defense Systems, Inc.®" and identifies WDS as "a leader in wildfire risk management and response" offering "proven" wildfire prevention, mitigation, and post-fire suppression services to American Family policyholders in Arizona, Colorado, Nevada, Oregon, and Washington. This unsolicited, prominent acknowledgment of WDS's trademark rights by a major commercial partner operating at a national scale is strong evidence that the WILDFIRE DEFENSE SYSTEMS mark has acquired distinctiveness and serves as a recognized source identifier in the marketplace. A true and correct copy of this webpage is attached hereto as **Exhibit G**.

## DEFENDANT'S INFRINGING CONDUCT

22.     Defendant markets wildfire-related products and services, including a hardware-and-software wildfire mitigation offering, through Defendant's website and associated marketing channels.

23.     Defendant has used, and continue to use, the designation "Frontline Wildfire Defense System" and/or "wildfire defense system(s)" (and confusingly similar variants) in a manner that functions as a mark and/or as a prominent source-identifying designation in connection with Defendant's goods and services. Examples include, without limitation, prominent uses on Defendant's website and web pages such as:

8

a.   Page titles and headings describing "The Frontline Wildfire Defense System." See Frontline website (https://www.frontlinewildfire.com/) as accessed on May 1, 2026, attached hereto as **Exhibit H**.

b.   Descriptive copy repeatedly referring to Defendant's offering as "Frontline's wildfire defense system." See Frontline Brochure attached hereto as **Exhibit I.**

c.   Search-result snippets and metadata that display "Wildfire Defense System(s)" in ways likely to create consumer confusion. See Frontline Defense System search results attached hereto as **Exhibit J**.

24.   Defendant's use is "in commerce," including on the Internet, and is directed to prospective customers nationwide and in Montana.

25.   Defendant's use is likely to cause confusion as to affiliation, sponsorship, approval, or source, including at least initial-interest confusion in online channels where consumers encounter Defendant's use in search results, page titles, headings, and marketing copy. See "Wildfire Defense System Saves Residence from Raging Roosevelt Fire" last accessed on 05/01/2026 and attached hereto as **Exhibit K**.

26.   Here, at a minimum:

a.   Defendant's "wildfire defense system(s)" phrasing is identical or nearly identical to WDS's WILDFIRE DEFENSE SYSTEMS mark.

b.   The parties operate in closely related wildfire mitigation markets, and consumers encountering Defendant's use are likely to believe Defendant is affiliated with, sponsored by, or a line extension of WDS.

c.   The parties use overlapping marketing channels, including the Internet and wildfire-related professional/industry channels.

27.   WDS has experienced actual confusion including incidents involving third parties confusing WDS and Defendant at industry/government-related events and through automated Internet alerts that conflate the parties.

**NOTICE; DEFENDANT'S KNOWLEDGE; CONTINUED MISUSE**

28.   WDS, through counsel, provided written notice to Defendant of WDS's trademark rights and demanded cessation of the confusing use, including via a cease-and-desist letter dated April 9, 2024. A copy of the April 9, 2024, demand letter is attached hereto as **Exhibit L**.

29. The April 9, 2024, letter identified specific infringements by Defendant of WDS's trademark rights, and demanded removal and remediation of the infringing content by Defendant.

30. Defendant failed to cure its infringement of WDS's trademark rights.

31. WDS, through counsel, reiterated its demands in a further cease-and-desist letter dated October 30, 2025, including referencing WDS's Principal Register registration. Attached hereto as **Exhibit M**.

32. WDS identified continued and additional infringement by Defendant of WDS's trademark rights, and afforded Defendant a final opportunity to remedy its continued and knowing infringement of WDS's trademark rights by date certain.

33. Despite the multiple notices over the past approximately two years, Defendant has refused to cease the challenged use and have continued to use "wildfire defense system(s)" and similar designations in commerce.

34. Defendant's continued use after notice supports a finding of willfulness, entitling WDS to enhanced remedies as permitted by law.

## **HARM**

35. Defendant's conduct is likely to cause, and has caused, consumer confusion and mistake, including confusion as to affiliation, sponsorship, and approval.

36.     Defendant's conduct has injured WDS by, among other things, diverting prospective customers, impairing WDS's goodwill, interfering with WDS's control over its reputation, and forcing WDS to expend resources to police and correct confusion.

37.     Unless enjoined, Defendant will continue their infringing conduct, and WDS will continue to suffer harm.

## CAUSES OF ACTION

### COUNT I —
### FEDERAL TRADEMARK INFRINGEMENT (REGISTERED MARKS)
(15 U.S.C. § 1114)

38.     WDS repeats and re-alleges the prior paragraphs as if fully set forth herein.

39.     WDS owns valid federal registrations for WILDFIRE DEFENSE SYSTEMS and other WDS marks as alleged above.

40.     Defendant, without WDS's consent, has used in commerce reproductions, counterfeits, copies, or colorable imitations of WDS's registered marks in connection with the advertising, offering for sale, and sale of Defendant's goods and services.

41.     Defendant's use is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with WDS, or as to the origin, sponsorship, or approval of Defendant's goods and services.

42.    WDS has been and will continue to be damaged by Defendant's acts and is entitled to injunctive and monetary relief pursuant to 15 U.S.C. § 1114, 15 U.S.C. § 1116(a), and 15 U.S.C. § 1117(a).

**COUNT II —**
**FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION**
(15 U.S.C. § 1125(a))

43.    WDS repeats and re-alleges the prior paragraphs as if fully set forth herein.

44.    WDS owns protectable trademark rights in WILDFIRE DEFENSE SYSTEMS and related marks through registration and common-law use.

45.    Defendant has used in commerce a term, name, symbol, or device, and false or misleading designations of origin, that are likely to cause confusion as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's goods and services.

46.    Defendant's actions constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

47.    WDS is entitled to injunctive relief and monetary relief pursuant to 15 U.S.C. § 1116(a) and 15 U.S.C. § 1117(a).

48.    Defendant's Internet-focused use and presentation of the challenged term, including in headings, page titles, and content likely to divert attention, is

actionable because trademark law protects against Internet-based confusion, including initial-interest confusion, in appropriate circumstances.

## COUNT III —
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## (MONTANA COMMON LAW)

49.    WDS repeats and re-alleges the prior paragraphs as if fully set forth herein.

50.    Under Montana common law, a business may obtain enforceable rights in a trade name or mark and may seek relief against conduct that misappropriates goodwill and creates marketplace confusion.

51.    WDS has developed protectable goodwill in the WDS marks, including WILDFIRE DEFENSE SYSTEMS, through long and continuous use, advertising, and performance of services in Montana and throughout the United States.

52.    Defendant's use of confusingly similar designations is likely to cause confusion among consumers in Montana and elsewhere and constitutes common-law trademark infringement and unfair competition under Montana law.

53.    Montana recognizes limits on exclusive rights where terms are primarily geographic or otherwise descriptive absent distinctiveness; WDS alleges, and will prove, that its mark is distinctive through acquired distinctiveness/secondary meaning and that Defendant's use is likely to confuse.

54.   WDS is entitled to injunctive relief and damages available under Montana law.

## **PRAYER FOR RELIEF**

WHEREFORE, WDS respectfully requests that the Court enter judgment in its favor and against Defendant, and grant the following relief:

A.   A declaration that Defendant's acts constitute trademark infringement and unfair competition.

B.   A permanent injunction enjoining Defendant and all persons acting in concert with them from using WILDFIRE DEFENSE SYSTEMS and any confusingly similar designation, including "wildfire defense system(s)," in connection with Defendant's goods and services, including online marketing.

C.   An order requiring Defendant to remove the infringing designations from all websites, social media, sales decks, marketing collateral, and other promotional materials.

D.   An accounting and award of Defendant's profits, WDS's actual damages, and other monetary relief as authorized by 15 U.S.C. § 1117(a).

E.   Pre-judgment and post-judgment interest, costs, and allowable disbursements.

F.      Reasonable attorneys' fees in an "exceptional case" under 15 U.S.C. §

1117(a) and applicable standards.

G.      Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

WDS demands a trial by jury on all issues so triable.

DATED: June 3, 2026

                                 BOONE KARLBERG P.C.

                                 /s/ Thomas J. Leonard
                                 Thomas J. Leonard
                                 *Attorneys for Plaintiff Wildfire Defense*
                                 *Systems, Inc.*